In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 15-3607

VENITIA HOLLINS,

*Plaintiff-Appellant*,

*v.*

REGENCY CORPORATION and HAYES BATSON,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 07686 — **John J. Tharp, Jr.**, *Judge*.

_____

ARGUED MAY 25, 2017 — DECIDED AUGUST 14, 2017

_____

Before WOOD, *Chief Judge*, and BAUER and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. Regency Corporation operated for-profit cosmetology schools in 20 states. Each Regency Beauty Institute offered both classroom instruction and practical instruction in a "Regency Salon," where members of the public could receive cosmetology services at low prices. Venitia Hollins was a Regency student, first at its Merrillville,

Indiana, location, and later at its Tinley Park, Illinois, facility. In this case, Hollins asserts that the work she performed in the Salon was compensable for purposes of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201; she also asserts that Regency violated various state laws, including the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, and the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1 *et seq.*, among many others. Her complaint indicates that she wanted to bring her suit as a collective action under the FLSA and a class action under the state statutes, but the district court denied her motion conditionally to certify the FLSA action and never certified a class action under Federal Rule of Civil Procedure 23. Instead, it addressed the individual merits of her case on summary judgment and ruled in Regency's favor. Hollins has appealed. She now argues that this court lacks jurisdiction over her own appeal, because the claims of other putative members of her collective and class actions are still before the district court. In the alternative, she contends that she and her fellow students should have been recognized as employees entitled to proper payment under the relevant statutes.

I

Regency, which has since closed its doors, at one time operated nearly 80 cosmetology schools around the country. Its students were required by state law to complete 1,500 hours of a combination of classroom and "hands-on" work. They accomplished the latter task by working in the school's salon, at which they provided services—at discounted prices—for customers. Regency gave them credits for hours worked at the salon, which it also called the "Performance Floor," but it did

No. 15-3607 3

not otherwise pay them for their work. Believing that she and her fellow students were entitled to wages, Hollins sued under the FLSA and state-law wage statutes to recover the monies she believed were owed.

Hollins filed her initial complaint on October 25, 2013, against Regency and Hayes Batson, its owner and chief executive officer (we refer to them collectively as Regency); three days later she filed a motion for class certification under Federal Rule of Civil Procedure 23 and for conditional certification of the FLSA collective action, 29 U.S.C. § 216. The district court took no action on either part of her motion. Instead, the parties filed a proposed case-management plan, in which they suggested that the court rule first on the liability issues for the named plaintiff (Hollins), and then decide any class or collective certification issues. Over the next year, discovery proceeded. During that time, a number of people filed consent forms indicating that they wanted to opt in to the FLSA collective action. The district court did nothing with those forms. Instead, on October 27, 2015, it granted summary judgment in favor of Regency and denied as moot Hollins's pending motions for conditional certification of the FLSA collective action and class certification on the other theories. (The issues presented in the motions were not really moot, since they still could be affected by our ruling. The most one can say is that by not granting them, the district court effectively limited the case to Hollins's individual claims.)

Hollins filed a notice of appeal on November 20, 2015, well within the 30 days provided by Federal Rule of Appellate Procedure 4(a)(1)(A). But she became worried about appellate jurisdiction because of the presence of the people who had expressed an interest in opting into the FLSA action. To

4                                                               No. 15-3607

resolve that question, she moved on May 23, 2016, to dismiss the appeal or to confirm appellate jurisdiction. At our request Regency responded, and in an order issued on December 21, 2016, we decided to carry the jurisdictional issue with the case.

## II

Federal litigants normally must wait for a final judgment before they can bring a matter to the court of appeals. See 28 U.S.C. § 1291; *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106–07 (2009). Although there are some exceptions to that rule, see, *e.g.*, 28 U.S.C. § 1292(a)(1) (preliminary injunctions), 28 U.S.C. § 1292(b) (questions of exceptional importance), FED. R. CIV. P. 23(f) (class-certification decisions), none of those exceptions applies to the present case. The question before us instead is whether the judgment that Hollins wants to challenge is truly final—that is, does it dispose of all claims of all parties? See FED. R. CIV. P. 54; see also *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015).

The analysis that applies to the putative Rule 23 class differs somewhat from that which applies to the FLSA collective action, but those differences are not material for our purposes. The critical question for both is whether the existence of the unnamed Rule 23 class members, or the aspiring members of the collective action who have signaled their interest in participating, defeats the finality of the district court's judgment for purposes of appeal. In other words, are those people additional "parties" whose claims have not yet been resolved? If so, then we do not have a final judgment. If not, then we may proceed.

No. 15-3607 5

Looking first at the Rule 23 part of the case, we see a common situation: a person files an action on behalf of herself and others similarly situated, but the district court dismisses the individual case before ruling on class certification (either because there is no pending motion for certification, or because the district court chooses not to reach that issue). In such a case, the Supreme Court has said that "no one [is] willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified." Smith v. Bayer Corp.*, 564 U.S. 299, 314 (2011) (quotation marks and citation omitted); see also *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) ("[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified."). This does not mean that the rights of the unnamed putative class members are unaffected by the filing of the action. For example, the statute of limitations on their claims is suspended during the pendency of the putative class action. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). And if an unnamed member wants to appeal the denial of class certification, the Supreme Court has said that she may do so without first formally intervening in the district court. *Devlin v. Scardelletti*, 536 U.S. 1 (2002). But neither of these cases even hints that appellate review is impossible without some kind of order from the district court disposing of the claims of the unnamed members of an uncertified class.

We conclude that the same result should follow for the claims of potential members of an FLSA collective action, if the collective action has never been conditionally certified and the court has not in any other way accepted efforts by the unnamed members to opt in or intervene. (Hollins did not argue that the outsiders' efforts to opt into her case should have

Case: 1:13-cv-07686 Document #: 117 Filed: 09/05/17 Page 6 of 13 PageID #:1430
Case: 15-3607  Document: 00713063895  Filed: 09/05/2017  Pages: 13

6  No. 15-3607

been construed as motions to intervene under Federal Rule of Civil Procedure 24, nor is it clear that intervention of right under Rule 24(a), rather than permissive intervention under Rule 24(b), would have been correct. We have no need to pursue this line of analysis further.)

Even though the statute, 29 U.S.C. § 216(b), does not spell out any process for conditional certification, the Supreme Court has endorsed this practice—indeed, it has gone further and characterized it as an important step in these cases. In *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), the Court addressed FLSA collective actions in some detail. Its central holding was that a potential collective action is no longer justiciable when the lone plaintiff's individual claim becomes moot. *Id.* at 1526. In the course of explaining this decision, the Court noted:

> Under the FLSA … "conditional certification" does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, … who in turn become parties to a collective action only by filing written consent with the court, § 216(b).

*Id.* at 1530. The Court never said, however, that an unnamed and un-joined member of the FLSA collective action could become a party by filing a consent *before* the court even conditionally certified the group.

The role of the district court in defining the scope of the potential FLSA collective action is more than ministerial. The named plaintiff is free to allege whatever she wants for her group, but the court must assess that proposed definition and

No. 15-3607 7

assure itself that the employees identified are raising similar FLSA claims. In exercising this power, district courts do not hesitate to pare down the group or to deny conditional certification altogether. See Laura L. Ho, *Collective Action Basics*, 10 EMP. RIGHTS & EMP. POL'Y J. 427, 429 & n. 12 (2006) (citing cases). This implies that, just as in Rule 23 class actions, the members of an uncertified group are not the type of parties whose presence would block a judgment against the named plaintiff from being final, unless they have otherwise gained full party status. Our decision in *Epenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012), supports this conclusion. There we wrote the following:

> Collective actions are certified and decertified just like class actions, unaffected by the absence of a governing rule of procedure. And "when a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs," *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010)—which is just what happens when a Rule 23 class is decertified: the unnamed class members go poof and the named plaintiffs' claims revert to being individual claims. If the denial of class certification is reversed, the suit will proceed with the plaintiffs as representatives of the opt-ins. There is no relevant difference between the collective, consisting of opt-ins, and the class, consisting of class members minus the opt-outs.

688 F.3d at 877.

All of this persuades us that we do have a final judgment, and that the unaccepted opt-in notices that the district court received do not stand in the way of that conclusion. The col-

Case: 1:13-cv-07686 Document #: 117 Filed: 09/05/17 Page 8 of 13 PageID #:1432
Case: 15-3607    Document: 00713063895    Filed: 09/05/2017    Pages: 13

8                                                            No. 15-3607

lective action was never conditionally certified, and those notices did not, of their own force, make the filers "parties" whose unresolved claims would defeat finality. This is not to say that class actions and FLSA collective actions are identical for other purposes. For instance, unnamed members of a Rule 23 class benefit from *American Pipe*'s tolling rule, whereas the claims of potential members of an FLSA collective action are not tolled until they file opt-in notices. See 7B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 1807 (3d ed. 2005). But tolling is not an issue in this case. It is enough to say nothing about the claims of the people who either did signal their interest in opting into Hollins's FLSA claim, or those who might later wish to do so, defeats appellate jurisdiction. We therefore are free to proceed to the merits of Hollins's individual case.

### III

In assessing whether Hollins was an "employee" for purposes of the FLSA, we would like to be able to rely on the statute. But, as we noted in *Vanskike v. Peters*, 974 F.2d 806 (7th Cir. 1992), it is of little use: it "defines the term 'employee' in a circular fashion, as 'any individual employed by an employer,' 29 U.S.C. § 203(e)(1) … ." 974 F.2d at 807. The Supreme Court has added that we must construe the terms "employee" and "employer" expansively, see *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). This, we said in *Vanskike*, requires us to "examine the 'economic reality' of the working relationship." 974 F.2d at 808. The Department of Labor has offered a six-factor "test" that (it thinks) enables a court to distinguish between an employee and an unpaid trainee. See DOL, Wage & Hour Div., Fact Sheet # 71, Internship Programs Under The Fair Labor Standards Act (April 2010)

No. 15-3607 9

https://www.dol.gov/whd/regs/compliance/whdfs71.pdf (last visited Aug. 14, 2017). It instructs that "[i]f all of the factors listed [below] are met, an employment relationship does not exist under the FLSA":

1. The internship, even though it includes actual operation of the facilities of the employer, is similar to training which would be given in an educational environment;

2. The internship experience is for the benefit of the intern;

3. The intern does not displace regular employees, but works under close supervision of existing staff;

4. The employer that provides the training derives no immediate advantage from the activities of the intern; and on occasion its operations may actually be impeded;

5. The intern is not necessarily entitled to a job at the conclusion of the internship; and

6. The employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

*Id.* Numerous other multi-factor tests have also been used by courts. See, *e.g.*, *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 565–66 (7th Cir. 2009) (ten factors, adapted from the ALI's Restatement (Second) of Agency § 220); *Sec. of Labor v. Lauritzen*, 835 F.2d 1529, 1534–35 (7th Cir. 1987) (six or seven factors).

The district court was rightly skeptical about the utility of this plethora of "factors." It decided instead to turn to the Supreme Court's decision in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), for guidance on the substance of the distinction that the statute is trying to draw. The question in *Portland Terminal* was whether unpaid people who participated in a course of practical training for prospective yard brakemen were "employees" for purposes of the FLSA. This training, the Court said, was "a necessary requisite to entrusting them with the important work brakemen must do." *Id.* at 149. The course required the trainees to perform the actual work of brakemen, under the supervision of the permanent crew. Even though the trainees were performing some useful function for the employer, and they were doing work identical to that of the ordinary employees, the Court concluded that they were not "employees" as the FLSA uses the term.

It came to this conclusion despite its recognition that "[w]ithout doubt the Act covers trainees, beginners, apprentices, or learners if they are employed to work for an employer for compensation." *Id.* at 151. Nevertheless, the record showed that the railroads received no immediate advantage from any work done by the trainees. *Id.* at 153. The Court stressed that this was not a case "in which an employer has evasively accepted the services of beginners at pay less than the legal minimum without having obtained permits" from the government. *Id.*

In an attempt to make sense of all this, the Second Circuit confronted the question whether unpaid interns who were working for Fox Searchlight and Fox Entertainment Group were employees. *Glatt v. Fox Searchlight, Inc.*, 811 F.3d 528 (2d Cir. 2015). It reviewed much of the same material we have just

No. 15-3607 11

discussed, and then turned to the question of the correct legal test to use. The plaintiff-interns urged that a person should qualify as an employee "whenever the employer receives an immediate advantage from the interns' work." 811 F.3d at 535. The Department of Labor, as *amicus curiae*, urged the court to adopt the six-factor test it had developed. The court rejected both of those suggestions and instead adopted the defendants' proposed test, which asks "whether the intern or the employer is the primary beneficiary of the relationship." *Id.* at 536. It identified "three salient features" of its primary-beneficiary test: (1) it focuses on what the intern receives in exchange for his work; (2) it is flexible enough to permit the court to take into account the economic reality of the situation; and (3) it reflects the fact that the intern-employer relationship differs meaningfully from the standard employee-employer relationship. *Id.*

The Eleventh Circuit found the *Glatt* approach persuasive in its own case dealing with interns, *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199 (11th Cir. 2015). It found significant the fact that the training involved in *Portland Terminal* was not "a universal requirement for a particular type of educational degree or for professional certification or professional licensure in the field." *Id.* at 1210. In addition, just as the Supreme Court had done in *Portland Terminal*, the Eleventh Circuit acknowledged "the potential for some employers to maximize their benefits at the unfair expense and abuse of student interns." *Id.* at 1211. It suggested an approach that focuses on the benefits the student receives, while still considering whether the employer is receiving some unfair advantage or otherwise abusing the relationship. *Id.* (At that point, it turned to a seven-factor test, which we omit.)

In our case, time on the Professional Floor was a state-mandated requirement for graduation from the cosmetology program—*i.e.* a universal requirement for professional licensure. Hollins was actually paying Regency for the opportunity to receive both classroom instruction and supervised practical experience, both of which were necessary for her degree. Regency was in the educational business (indeed, for profit), not in the beauty salon business. Hollins did not need to go out and find a place where she could serve as an intern or an extern; Regency took care of that. We conclude that the fact that students pay not just for the classroom time but also for the practical-training time is fundamentally inconsistent with the notion that during their time on the Performance Floor the students were employees. It is also notable that Regency structured things to minimize competition with ordinary beauty salons: it forbade licensed cosmetologists from working in the Regency Salon, and the students received not money, but licensing hours and academic credit for their time and effort.

Hollins resists this conclusion by pointing out that the students were also required to perform various menial tasks, such as acting as receptionists, cleaning and sanitizing the floor, selling salon beauty products, and restocking those products as needed. Regency could have concluded, however, that these tasks are also part of the job of the cosmetologist, and that the students needed to learn time-management skills. Moreover, as the district court pointed out, "Salon Safety and Sanitation" is the most heavily tested subject area on the Illinois and Indiana cosmetology licensing exam. Regency was required by the National Accrediting Commission of Career Arts & Sciences to use "practical learning methods" throughout its curriculum. That is enough to show that the

No. 15-3607                                                                13

incidental tasks to which Hollins points are not enough to tip the balance over to the "employee" side of the line.

The district court's careful opinion goes into more detail about these and other considerations that demonstrate why Hollins was not entitled to compensation for her time in the salon. See *Hollins v. Regency Corp.*, 144 F. Supp. 3d 990 (N.D. Ill. 2015). These cases normally turn on the facts of the particular relationship and program, and so we should not be understood as making a one-size-fits-all decision about programs that include practical training, or internships, or tasks that appear to go beyond the boundaries of a program. On the present record, however, we conclude that the district court correctly granted summary judgment for Regency Corporation, and we therefore AFFIRM its judgment.

CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit